IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Terrell Audre Lovelace | Crim. No. 4:08-cr-00060-TLW-2 |
| v. | |
| United States of America | **ORDER** |

This matter comes before the Court on Defendant Terrell Audre Lovelace's motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). ECF No. 269. For the reasons below, his motion is denied.

## PROCEDURAL BACKGROUND

In September 2007, Lovelace and two codefendants committed three violent armed robberies in Darlington, South Carolina. *See generally* Presentence Investigation Report ("PSR"), ECF No. 103. Specifically, Lovelace participated in the armed robbery of a convenience store, a gas station, and a restaurant. *Id.* During each of these robberies, firearms were brandished, and employees and customers were threatened with harm. In the resulting Indictment, Lovelace was named in six of seven counts, and he was specifically charged with three counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(b)(1) and three counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). *Id.*

On July 7, 2008, Lovelace pled guilty to Counts 1 and 5 of the Indictment, which charged him with one count of Hobbs Act robbery and one count of using a firearm during and in relation to a crime of violence, in violation of § 924(c). ECF

No. 76. In exchange for his plea, the Government agreed to dismiss four of the six counts against Lovelace: dismissed Counts 2 and 3 charged him with Act robbery and dismissed Counts 4 and 6 charged him with violations of § 924(c). ECF Nos. 1 & 76.

Lovelace's plea agreement was made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and called for a stipulated sentence of 264 months imprisonment. ECF No. 76. At sentencing, the Court accepted the plea agreement and imposed the stipulated sentence of 264 months imprisonment (180 months as to Count 1, and 84 months as to Count 5, said sentences to run consecutively). ECF No. 113. Lovelace did not seek a direct appeal of either his convictions or sentence.

On September 22, 2023, Lovelace, through counsel, filed his present motion for compassionate release. ECF No. 274. The Government opposes Lovelace's motion, and Lovelace has since replied to the Government's response. ECF Nos. 274 & 275. Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute, § 3582(c)(1)(A), which permits the sentencing court to reduce a defendant's sentence after he has first administratively pursued his request for release with the Bureau of Prisons ("BOP"). *See generally United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023) (outlining the procedure for seeking

compassionate release).

Under § 3582(c)(1)(A), a federal district court may only reduce a defendant's term of imprisonment if two prerequisite conditions are met. The court first must find that there are "extraordinary and compelling reasons warrant[ing] such a reduction," and second, "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]" § 3582(c)(1)(A). Regarding this second prerequisite, a court imposing a reduced sentence must find, at the time it issues its order, that the reduction is consistent with the Commission's *then-*applicable policy statement. *See* § 3553(a)(4)(A)(ii) (instructing courts to apply the version of the Guidelines "in effect on the date the defendant is sentenced"); U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). If these two prerequisites are met, then the court proceeds to considering "the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A)

Before 2018, federal courts could only consider a request for compassionate release only upon the motion of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A) (2012). In addressing the "extraordinary and compelling reasons" and "consistent policy statement" prerequisite conditions for these BOP-filed motions, the Sentencing Commission issued a policy statement in 2006 specifically defining the circumstances constituting "extraordinary and compelling reasons", which it then updated in 2018. *See United States v. McCoy,* 981 F.3d 271, 276 (4th Cir. 2020). The Commission updated this policy statement in 2021 and it was codified as U.S.S.G. §

1B1.13. Shortly after the Commission issued its 2018 policy statement for BOP-filed motions, Congress passed the First Step Act of 2018, which "amended § 3582(c)(1)(A) to remove the Bureau of Prisons from its former role as a gatekeeper over compassionate release petitions . . . and provide[d] that defendants now may file motions for sentence modifications on their own behalf, so long as they first apply to the BOP." *Id.* (cleaned up). However, the First Step Act's modifications to § 3582(c)(1)(A) did not define "extraordinary and compelling reasons" in the context of the newly permissible defendant-filed motions. *Id.* Instead, the discretion to define "extraordinary and compelling reasons" remained with the Sentencing Commission via the issuance of policy statements. *Id.*; *see also* 28 U.S.C. § 994(t).

Following the passage of the First Step Act, the Sentencing Commission did not immediately issue a new policy statement or revise § 1B1.13 to address the basis for establishing "extraordinary and compelling reasons" in defendant-filed compassionate release motions. *See McCoy,* 981 F.3d at 276. In the interim, circuit courts, including the United States Court of Appeals for the Fourth Circuit, held that the second prerequisite for compassionate release under § 3582(c)(1)(A) "does not constrain the discretion of district courts" because, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to the defendant's compassionate-release motions [.]" *Id.* Accordingly, the Fourth Circuit held "that district courts need not conform" their analysis of whether a defendant has established "extraordinary and compelling reasons" for release to the grounds set forth in the pre-First Step Act version of § 1B1.13, since, by its terms, it only

applied to BOP-filed motions. *Id.* at 283. Thus, the Fourth Circuit held that, until the Sentencing Commission issued a new, applicable policy statement, "district courts [were] 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021).

On April 27, 2023, the Commission submitted proposed amendments to the Sentencing Guidelines to Congress. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254 (May 3, 2023) (providing notice of amendments to Congress). As relevant here, one of these amendments sought to amend the Commission's policy statement in § 1B1.13 in order to specifically define the grounds for establishing "extraordinary and compelling reasons" in defendant-filed compassionate release motions. *See* U.S.S.G. § 1B1.13 (2023 ed.). On November 1, 2023, the proposed amendments went into effect, an amended version of § 1B1.13 was issued, and it is now an "applicable policy statements issued by the Sentencing Commission" under § 3582(c)(1)(A), since it now accounts for defendant-filed motions. Thus, the policy statement now set forth in the amended version of § 1B1.13 now governs this Court's review of defendant-filed compassionate release motions. *Id.*; *see also United States of America v. Avaun Johnson*, No. CR ELH-14-0429, 2023 WL 8090628, at *6 (D. Md. Nov. 21, 2023) ("the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that '§ 1B1.13 is not an 'applicable' policy statement,' is no longer consistent with the Guidelines. This is

because the Policy Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A)").

Section 1B1.13 now identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. § 1B1.13(b)(1)–(6). They are: (1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, (2) the defendant's age and conditions related to his age, (3) the defendant's family circumstances, (4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, (5) the defendant received an "unusually long sentence," ; and (6) "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." *Id.* Additionally, § 1B1.13(c) of the Policy Statement now specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." Nonetheless, "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.* Lastly, § 1B1.13(d) of the policy statement limits the weight

a court may assign to a defendant's rehabilitation while serving a sentence, is also relevant, providing that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.*

Here, both Lovelace's motion and the Government's response were filed before the enactment of the Sentencing Commission's new policy statement on November 1, 2023.[1] Considering this, the Court will analyze Lovelace's arguments for establishing "extraordinary and compelling reasons" under the broader pre-policy statement "*any* extraordinary and compelling reason for release that a defendant might raise" standard established in *McCoy.* After conducting this analysis, the Court will evaluate whether a reduction in Lovelace's sentence is consistent with the § 3553(a) sentencing factors.

### DISCUSSION

To provide context to both Lovelace's motion and the Court's decision, the Court will first review the offense conduct establishing Lovelace's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

### I.    THE OFFENSE CONDUCT

This case involves three violent armed robberies committed by Lovelace and his codefendants in September 2007. All three robberies were of businesses in Darlington County, South Carolina. Each robbery involved Lovelace and his

---

[1] Neither party has requested amended briefing on the applicability of the Commission's November 1, 2023 amendments to § 1B1.13.

codefendants threatening to kill victims with firearms. Paragraphs 9–25 of the PSR outline the offense conduct. It will be further highlighted here.

The first armed robbery occurred on September 7, 2007. PSR ¶ 10. On that day, Lovelace and his two co-defendants, Bernard Bostic and Eugene Sutton, as well as another unknown individual decided to rob the Spring Mart convenience store in Darlington, South Carolina. *Id.* The four approached the store around 11:00 a.m. *Id.* When they arrived, Lovelace and Sutton remained in the car to serve as both getaway driver and lookout, while Bostic and the unknown individual covered their faces with red and black bandanas. *Id.* ¶ 19. A single clerk was working in the store. *Id.* ¶ 10. Bostic and the other robber entered the store, and Bostic—armed with a handgun—demanded the clerk put his hands up, not move, and open the register. *Id.* ¶ 11. The unknown individual proceeded to stand watch by the front window as Bostic jumped over the counter and pointed his gun at the clerk's head. *Id.* The clerk complied with Bostic's demands and opened the register. *Id.*

Bostic removed approximately $500.00 from the register and placed it into a backpack carried by the unknown individual. *Id.* After securing the cash, Bostic violently assaulted the clerk, who had not resisted the emptying of the cash register. *Id.* Bostic struck the clerk in the forehead with his handgun—knocking the clerk unconscious. *Id.* The clerk fell to the floor. *Id.* Bostic and the unknown individual fled to the getaway car where Lovelace was waiting. *Id.* Lovelace then departed the scene with his three co-defendants in tow. *Id.*

When the clerk awoke, the robbers were gone. *Id.* He was suffering physical

injury as he was bleeding from his forehead. *Id.* ¶ 12. Ten minutes later, a customer came into the store and found him on the ground. *Id.* An ambulance was called. *Id.* The clerk was taken to the hospital where he received stitches to close the wound on his forehead. *Id.*

The second armed robbery occurred two days later on September 9, 2007. *Id.* ¶ 13. At approximately 8:30 p.m., Lovelace, Bostic, and Sutton arrived to rob an Exxon gas station in Timmonsville, South Carolina. *Id.* This time, Sutton waited in the vehicle as the getaway driver, while Lovelace and Bostic covered their faces with red bandannas. *Id.* After they exited the vehicle, Lovelace and Bostic found the clerk sweeping the front of the store, and pointed a firearm at him, demanding he open the register. *Id.* ¶¶ 13–14. The clerk complied, opened the register, and knelt on the ground. *Id.* As the Lovelace and Bostic were removing cash from the register, a customer approached the checkout counter to pay for an item. *Id.* ¶ 14. One of the two pointed a firearm at the customer. *Id.* The customer was then robbed when one of the robbers demanded his wallet. *Id.* The customer complied and handed over $41.00 in cash. *Id.*

Before leaving the Exxon, Lovelace and Bostic ran to the store's cooler and grabbed an 18-pack and 6-pack of Budweiser beer. *Id.* ¶ 15. They then backed out of the front door, instructing the store clerk and the customer "Don't move or go anywhere." *Id.* Lovelace and Bostic fled the scene in Sutton's waiting getaway car. *Id.* Together, the three stole approximately $200.00 from the register, $41.00 from the customer, and 24 Budweiser beers from the store's cooler. *Id.* ¶ 16.

The third robbery occurred twelve days later on September 17, 2007, when Lovelace and Bostic robbed the Jin Jin Chinese restaurant in Darlington, South Carolina. *Id.* ¶ 17. At approximately 8:45 p.m., Lovelace and Bostic approached the back of the restaurant. *Id.* Again, both covered their faces with red bandanas and armed themselves with handguns. *Id.* When they entered the restaurant, Lovelace and Bostic pointed their firearms at employees and shouted, "Don't move." *Id.* ¶ 18. One of the robbers approached the register and told the employee behind the counter to open it up. *Id.* While this was occurring, the other robber, armed with his handgun, stood watch over the employees and the lobby area of the restaurant. *Id.* After stealing approximately $400.00 from the register, Lovelace and Bostic escaped through the rear of the restaurant. *Id.*

The Court also finds it appropriate to discuss a fourth uncharged robbery, which is outlined in the PSR's "Relevant Conduct" section. *Id.* ¶ 24. This robbery occurred on September 28, 2007, and involved Lovelace, Sutton, Bostic, and an unknown individual robbing the Mozingo Grocery in Bishopville, South Carolina. *Id.* Like the other three armed robberies, the four robbers entered the Grocery with their faces covered by red bandanas. *Id.* One of the robbers wielded a handgun and another carried a shotgun. *Id.* The robbers ordered the clerk on the ground and began to remove money from the register. *Id.* During the robbery, one of the robbers forced a customer into the store and held him at gunpoint. *Id.* After securing the cash from the register, the four fled. *Id.*

As noted, Lovelace was named in six of the Indictment's seven counts. ECF

No. 1. Ultimately, he entered a Rule 11(c)(1)(C) plea agreement and pled guilty to one count of Hobbs Act robbery and one count of violating § 924(c). ECF No. 76. As noted, in exchange for Lovelace's plea, the Government agreed to drop four counts for which Lovelace would have faced a significant sentence: two counts of Hobbs Act robbery, as well as two counts charging him with additional violations of § 924(c). *Id.*

## II.    THE PARTIES' ARGUMENTS

Before addressing the merits of Lovelace's motion for compassionate release, the Court will first review the arguments asserted by both Lovelace and the Government. *See* ECF Nos. 269, 274 & 275.

### A.    *Lovelace's Arguments in Support of His Motion*

Lovelace requests that the Court grant his motion on the basis that he can establish "extraordinary and compelling" reasons in favor of his release as required by § 3582(c)(1)(A). ECF No. 265. Specifically, he asserts three grounds purportedly constituting "extraordinary and compelling reasons." *Id.* They are "[1] his completion of sixteen years of his twenty-two-year sentence, [2] his young age at the time of the offense, [3] as well as his rehabilitative efforts while in prison." *Id.* at 1. Further, Lovelace argues that an analysis of the § 3553(a) factors "militates in favor of compassionate release [.]" *Id.* at 10.  For relief, Lovelace requests that the Court grant him release. *Id.* at 13.

B.    *The Government's Opposition*

The Government opposes Lovelace's motion on two independent grounds. ECF No. 274. Initially, the Government asserts that Lovelace has not presented "extraordinary and compelling reasons" warranting relief because each of his three arguments "fails to meet the heightened standard required by § 3582(c)(1)(A)(i)." *Id.* at 10. Additionally, and alternatively, the Government argues that even if Lovelace could meet the "extraordinary and compelling reason" standard the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in his sentence. *Id.* at 11.

III.    THE COURT'S REVIEW

Before filing his motion for compassionate release, Lovelace first requested a sentence reduction from the warden of his detention facility. ECF No. 269 at 3. That request was denied by the BOP on February 28, 2022. *Id.* Thus, Lovelace has satisfied the administrative exhaustion requirement. *Id.* Therefore, the Court must determine (1) whether Lovelace has established the existence of "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A), and (2) if so, whether granting his motion is consistent with the sentencing factors set forth in § 3553(a).

A.    *The "Extraordinary and Compelling Reasons" Standard*

In reviewing Lovelace's arguments for compassionate release, the Court concludes, after careful consideration, they do not rise to establishing "extraordinary and compelling reasons" for a sentence reduction. Lovelace advances three arguments for establishing "extraordinary and compelling reasons." They are

(1) the substantial completion of his sentence,[2] (2) his youth at the time of the offense,[3] and (3) his rehabilitation while incarcerated.[4] ECF No. 265 at 10. Individually, these arguments do not constitute an "extraordinary and compelling reason," however, they can be considered collectively and are normally addressed as part of the Court's analysis of the § 3553(a) factors. *See United States v. Harrison*, No. CR ELH-96-116, 2023 WL 4744747, at *11 (D. Md. July 25, 2023) ("Courts also consider factors such as the defendant's age at present and at the time of conviction, evidence of rehabilitation, and the percentage of the original sentence that a defendant has already served.") (citations omitted); *United States v. McMillon,* No. 2:17-CR-00022, 2023 WL 4674311, at *1 n.1 (S.D.W. Va. July 20, 2023) ("the percentage of a sentence that a defendant has served is not dispositive to the compassionate release analysis."); 28 U.S.C. § 994(t) ("rehabilitation alone cannot serve as a basis for compassionate release."); *United States v. Rucker*, No. 3:09-CR-00028, 2022 WL 1184670, at *3 (W.D. Va. Apr. 21, 2022) ("while consideration of a defendant's youth at the time of his offense has been deemed a proper factor supporting reduction under the compassionate release statute, *see McCoy*, 981 F.3d at 286, nowhere does the caselaw indicate that youth alone is a sufficient basis for a sentence reduction absent some other factor that could, on its own, constitute an

---

[2] The Court notes that substantial completion of a defendant's sentence is not one of the six grounds identified by the Sentencing Commission's in its now-applicable policy statement. *See* § 1B1.13 (b).

[3] Similarly, while circumstances related to an *ageing* defendant (at least 65 years old) while incarcerated are now a basis for establishing "extraordinary and compelling reasons" under § 1B1.13(b)(2) of the policy statement, a defendant's age at the time he committed his federal offenses, while arguably relevant, is not an "extraordinary and compelling reason" listed in the Guidelines.

[4] Section 1B1.13(d) of the new policy statement now definitively states "rehabilitation of the defendant is *not*, by itself, an extraordinary and compelling reason for purposes of this policy statement." (emphasis added).

'extraordinary and compelling' reason for relief."); *see Bostic v. United States*, No. 408CR00060001TLW1, 2023 WL 6218206, at *3 (D.S.C. Sept. 25, 2023) (analyzing Lovelace's codefendant's § 3582 arguments related to his youth and rehabilitation as part of its analysis of the § 3553(a) factors). Accordingly, because Lovelace's arguments for establishing "extraordinary and compelling—reasons" necessarily invoke the § 3553(a) factors—which are ultimately dispositive, the Court will assume, for purposes of this order, that Lovelace has met his burden of establishing "extraordinary and compelling reasons" for his release.

### B.    *The Court's review of the § 3553(a) factors*

However, even where, as here, a district court finds that a defendant has established "extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) (noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). The Court has balanced these factors in light of the compassionate release issues not in play at Lovelace's original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

First, the Court concludes that "the nature and circumstances of the offense

and the history and characteristics of the defendant" weigh heavily against a reduction in Lovelace's sentence. 18 U.S.C. § 3553(a)(1). This factor addresses Lovelace's arguments regarding his youth at the time of his federal offenses. Specifically, he asserts that "[h]e was 18 years old at the time of these offenses . . . [which] involved hot-headed choices made in the presence of peers . . . [who were] older and more experienced peers who already had adult felony convictions on their records when Lovelace did not." ECF No. 269 at 8. In conjunction with considering this factor, it is appropriate to separately highlight the facts of the instant offense followed by an accounting of Lovelace's criminal history.

As noted, the instant offense conduct is outlined in Paragraphs 9–24 of the PSR. While this order previously set forth that conduct, the Court will highlight the relevant portions again here. As noted, Lovelace committed three violent armed robberies. During these robberies, Lovelace and his codefendant possessed and brandished firearms in furtherance of violent crime. During the first robbery, where Lovelace served as the getaway driver, a store clerk was violently assaulted, knocked unconscious, and caused great physical injury, which required medical treatment to address a wound to his forehead. During the second and third robberies, Lovelace and his codefendants pointed firearms at store clerks, restaurant employees, and customers. These victims were placed in great fear of their personal safety and fear of being harmed by Lovelace and the others involved in the robberies. After a review of the facts of the instant offenses, the Court

concludes that "the nature and circumstances of the offense" weigh heavily against a reduction in Lovelace's sentence.

The second part of § 3553(a)(1), looks at the "history and characteristics of the defendant." § 3553(a)(1). As noted in his motion, prior to his instant federal convictions, Lovelace had a relatively minor criminal record, consisting of two convictions. Specifically, in 2004, at the age of 14, he was convicted of unauthorized use of an automobile or other vehicle. PSR ¶ 28. In 2007, he was convicted of driving without a license and a seatbelt violation. *Id.* ¶ 29. In his motion, Lovelace asserts that this lesser record in conjunction with his age at the time when he committed his federal offenses weighs in favor of his request for compassionate release.

In addition to his age, the Court notes, that Lovelace's "history and characteristics" are considered in conjunction with "the nature and circumstances of the offense." § 3553(a)(1). When considered together, the Court concludes that § 3553(a)(1) weighs against Lovelace's request for relief because his "history and characteristics" are significantly outweighed by the violent "nature and circumstances of the offense." The Court has given consideration to Lovelace's age at the time the robberies were committed. However, it is not persuaded that a reduction is appropriate in relation to his youth at the time of his federal offenses in light of the number of robberies committed, the fact that Lovelace was armed, and the fact that physical violence was inflicted on victims causing injury. Again, the offense conduct at issue is very serious. Lovelace committed three violent armed robberies. He brandished illegal firearms during two of these robberies. In another,

a store clerk was violently assaulted and knocked unconscious. He required medical treatment to address his serious head injury. Lovelace's conduct was egregious, serious, and significant. Moreover, the fact that Lovelace engaged in not one, but three armed robberies clearly demonstrates his repeated disregard for both the safety of others and the law. Accordingly, the Court finds that the § 3553(a)(1) weighs against Lovelace's request for relief and leads to the conclusion that he would pose a substantial risk to the public's safety if released.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant offenses demonstrate Lovelace's propensity—and willingness—to engage in both repeated criminal conduct and commit acts of violence. His actions further demonstrate a distinct disrespect for both the law and the safety of others. As outlined above, Lovelace's conduct during the three armed robberies was egregious and violent. The sentence imposed was— and is—necessary to (1) reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, and (4) afford adequate deterrence.

The Court next turns to §§ 3553(a)(3)-(6), which analyzes the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. Regarding these factors, Lovelace asserts that the Court should grant his motion because he has served a significant portion of his sentence, specifically, sixteen of twenty-two years. ECF No. 269 at 3. However, in considering these factors, the Court gives great weight to the parties' plea negotiations and the resulting plea agreement. Lovelace pled guilty

to two counts of the Indictment. As part of this plea agreement, he requested and received a stipulated sentence of 264-year sentence pursuant to Rule 11(c)(1)(C). In exchange for his plea, the Government agreed to dismiss four of the six counts, namely, Counts 2 and 3, charging Lovelace with Hobbs Act robbery, and Counts 4 and 6, charging him with violations of § 924(c).

In his motion, Lovelace argues that he chose to plead guilty because, at the time he was sentenced, multiple § 924(c) counts could be "stacked" because a first and "second or subsequent" offense could be charged at the same time, such that a defendant could be subject to § 924(c)'s then-mandatory minimum of 25 years on each charged "second or subsequent" offense. According to his motion, this "was no doubt a large factor in Mr. Lovelace's consideration for pleading guilty to the charges he did." ECF No. 269 at 4.  However, in 2018, after Lovelace was sentenced, Congress modified § 924(c) in the First Step Act to now provide that the 25-year mandatory minimum penalty *prospectively* applies to a "second or subsequent" § 924(c) conviction only if the prior § 924(c) conviction already "has become final." *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222.  In his motion, Lovelace now asserts that the First Step Act's nonretroactive modifications to the stacking of § 924(c) would now change his "consideration for pleading guilty to the charges he did." ECF No. 269 at 4

The Court finds that the First Step Act's modifications to the "stacking" of multiple § 924(c) convictions are of limited relevance in his case since Lovelace pled guilty to only *one* § 924(c) count. Further, while the prospect of the "staking" of

multiple § 924(c) sentences might have played a role in the Lovelace's decision to plead guilty, his argument ignores that his sentence was the result of a negotiated plea agreement, which considered Lovelace's significant criminal conduct and the violence he used in committing said conduct. Given this conduct, the Government sought a significant sentence against Lovelace, and a stipulated sentence pursuant to Rule 11(c)(1)(C) was the appropriate way to accomplish that in light of three violent armed robberies he committed. In support of this conclusion, the Court notes that the Government states as much in its motion, whereby it asserts that "it is clear the Government believed a significant sentence was warranted in this case" as evidenced by "the parties Rule 11(c)(1)(C) stipulation to a twenty-two-year sentence, which represents an upward variance from Defendant's advisory Guidelines range [.]" ECF No. 274 at 12.

As noted, in exchange for his plea, the Government dismissed four counts for which Lovelace faced *significant* sentences on each count. The Court cannot ignore this bargained for exchange, and judicial restraint now counsels against disturbing the parties' carefully negotiated 11(c)(1)(C) plea agreement. *Bond*, 56 F.4th at 385 (affirming the district court's denial of a § 3582 motion on the basis "that modifying the sentence would disturb the parties' carefully negotiated agreement") (cleaned up); *see also United States v. Jackson*, No. CR 3:16-69-JFA, 2022 WL 3908671, at *3 (D.S.C. Aug. 30, 2022) ("However, all of these changes in the sentencing laws are of no significance in this case. The defendant pleaded guilty in a written plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), which provided for an agreed

upon sentence [.]"). Lovelace received the exact sentence he bargained for in the plea agreement: 264 months. In light of the this bargained-for-exchange, the Court concludes that Lovelace's service of sixteen years of his twenty-two year sentence, does not provide a persuasive basis for circumventing the terms of his plea agreement and granting his motion. The Court has thus given careful consideration to this issue and §§ 3553(a)(3)-(6) and concludes that those factors do not favor release.

As to the remaining factors, the Court notes that its conclusion that Lovelace would pose a great risk to the public if released is buttressed by the significant—and violent—disciplinary record he has accumulated while in BOP custody. This record clearly contradicts his third argument that he should be released because he is now rehabilitated. Since his sentencing in 2009, Lovelace has accumulated sixteen disciplinary infractions. ECF No. 274–1. Of note, these infractions include (1) four infractions for possession of a dangerous tool, (2) four drug and alcohol related infractions, (3) two infractions for refusing to obey an order, (4) one infraction for possession of a hazardous tool, (5) one infraction for possessing a dangerous weapon, (6) one infraction for destroying an item during a search, (7) one infraction for indecent exposure, (8) one infraction for being absent from assignment, (9) one infraction for being in an unauthorized area. *Id.* The Court concludes that this extensive disciplinary history also weighs against release and shows Lovelace's continuing disrespect for authority. Lovelace would pose a significant risk to the safety of the public if released as illustrated by both the

instant offense conduct and has accumulation of disciplinary infractions while incarcerated.

The Court has carefully weighed the relevant § 3553(a) factors and bases its decision on the individualized considerations outlined herein. Again, the offense conduct at issue is very serious. It involved three violent armed robberies where firearms were brandished, a store clerk was assaulted, and other victims were threatened with significant harm. The record before the Court clearly demonstrates Lovelace's disregard for both the safety of others and the law. Based on the above analysis, the Court finds that the § 3553(a) factors weigh against Lovelace's request for relief. The Court further concludes that Lovelace would pose a substantial risk to the public's safety if he were to be released. Accordingly, the Court concludes a sentence reduction is not appropriate.

<u>CONCLUSION</u>

The Court concludes that Lovelace's motion for compassionate release should be denied. In assuming that Lovelace has established "extraordinary and compelling reasons" for his release, the Court concludes that it is still appropriate to deny his motion based on its analysis and balancing of the § 3553(a) factors. Accordingly, Lovelace's Motion, ECF No. 269, is denied.

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

December 28, 2023
Columbia, South Carolina